**STATE of Missouri, Respondent,**

v.

**Lloyd MAYABB, Appellant.**

No. 46487.

Supreme Court of Missouri,
Division No. 1.

Oct. 13, 1958.

Wear & Wear, Springfield, for appellant.

John M. Dalton, Atty. Gen., Hugh P. Williamson, Asst. Atty. Gen., for respondent.

COIL, Commissioner.

Defendant was convicted of manslaughter by culpable negligence under Section 559.070 RSMo 1949, V.A.M.S., and sentenced to five years in the state penitentiary. He has appealed but has filed no brief. We shall consider the assignments contained in his motion for new trial.

A portion of assignment 1, viz., "The verdict of the jury is against the evidence, * * *" and assignment 2, "The verdict is against the law, as declared in the instructions given by the Court," are too general to preserve for review any contention of error. State v. Henderson, 356 Mo. 1072, 204 S.W.2d 774, 777 [2].

New trial assignment 5 is, "The verdict of the jury was a result of passion and prejudice and was excessive." That portion which charges that the verdict was the result of passion and prejudice is too general to preserve any contention of error for review. State v. Hagerman, 361 Mo. 994, 238 S.W.2d 327, 329 [4]. That portion which charges that the verdict was excessive is without merit because the punishment assessed by the verdict is within the limits fixed by the legislature in Section 559.140 RSMo 1949, V.A.M.S., and thus the verdict cannot be "adjudged to be excessive in the absence of some showing not apparent in this record." State v. Burchett, Mo., 302 S.W.2d 9, 19 [25].

New trial assignment 6 is that the court erred in overruling defendant's motion for judgment of acquittal filed at the close of the state's evidence. Any possible error in that respect was waived by the defendant for the reason that he thereafter offered evidence in his behalf. State v. Scott, Mo., 299 S.W.2d 526, 528 [1, 2].

Defendant's new trial assignment 3 is that the court erred in overruling his motion to suppress evidence given by him at the coroner's inquest inquiring into the casualty upon which defendant's prosecution was based, for the reasons that "said Defendant was subpoenaed as a witness and he had no attorney and was not properly advised as to his constitutional rights, and that the testimony he gave could be used against him."

The state, as part of its case, read certain admissions of defendant made by him in testimony given at the coroner's inquest to which he had been subpoenaed by a deputy sheriff at a time when he was not under arrest. At a pretrial hearing on defendant's motion to suppress, it appeared that

the sheriff who was conducting the coroner's inquest asked defendant prior to the time he testified: "Mr. Mayabb, you understand, now, that under your constitutional right you are not obligated to testify, don't you?" And that defendant answered, "Yes, sir. I want to tell what I know." Defendant testified at the hearing that he was asked that question and that he had answered as indicated, but that he had not understood what his constitutional rights were, that he thought he had to testify because he was subpoenaed, that he had no lawyer, that he had not consulted counsel nor advised with friends or his parents about what to do, and that he had completed eight years of school. He testified also that at the coroner's inquest he did want to tell what he knew about the accident and that he did proceed to tell what he knew, but that he was nervous and "didn't know half what I said." He explained that the reason he wanted to tell what he knew was because another witness had said he had been with the defendant on the night of the casualty and that that was not true, and that defendant wanted to state that he was alone and that he did not want to testify to anything else.

Defendant also adduced at the hearing on the motion to suppress a witness experienced in giving and evaluating intelligence tests, who concluded as a result of tests given defendant that although defendant was 27 years of age his grade level showed him to be about ready for the fifth grade in school and his mental age was that of a boy about 10½ years of age. However, Exhibit 1, which was adduced at the hearing and later introduced in evidence at the trial, indicated that the "Total: Mental Age," of defendant was 12 years, 6 months, with an average I.Q. of 78.

■ Whether defendant's testimony given at the coroner's inquest was admissible as evidence at the instant trial depended upon whether the testimony was voluntarily given at the inquest. And the fact, standing alone, that defendant was

subpoenaed to the coroner's inquest did not make his testimony before the coroner involuntary. In State v. McDaniel, 336 Mo. 656, 80 S.W.2d 185, it was ruled that whether a subpoenaed defendant's testimony at a coroner's inquest was admissible at a subsequent trial, depended not alone on the fact that he had been subpoenaed but upon whether the testimony was in fact voluntary, and that in determining whether the testimony was voluntarily given, the facts of each case should be examined and inquiries answered, such as "Whether the defendant was ignorant; whether he had counsel; whether he was advised of his rights; whether coercive methods were employed in obtaining the statement from him, etc." State v. McDaniel, supra, 80 S.W.2d 195. State v. Burnett, 357 Mo. 106, 206 S.W.2d 345, 348 [6–8]; State v. Goode, 271 Mo. 43, 195 S.W. 1006.

■ We are of the opinion that instant defendant was advised of his constitutional right not to testify in language that he, despite his mental age, could understand, and we are of the view that defendant's answer upon being asked whether he understood that he was not obligated to testify ("Yes, sir. I want to tell what I know.") indicates that he sufficiently understood that warning. Defendant's testimony to the contrary at the hearing on his motion to suppress is not convincing.

It is true that defendant did not have an attorney at the time of the inquest, and it is true that, as charged in defendant's motion for new trial, he was not specifically told that the testimony he gave could be used against him. After examining the entire matter, however, we think, as above noted, that the words exchanged between the sheriff and the defendant were sufficient to indicate to defendant his constitutional right, and show further that defendant understood the sheriff's warning. We hold, therefore, that the trial court properly concluded that defendant's statements at the coroner's inquest were voluntarily made and consequently that defendant's motion

to suppress was correctly ruled. State v. Black, 360 Mo. 261, 227 S.W.2d 1006, 1007 [2].

Defendant's new trial assignment 4 is that the court erred in admitting in evidence the opinion of a trooper of the highway patrol that defendant was under the influence of alcohol immediately after the casualty in question. The witness, who had been a trooper for eleven years, arrived at the scene of the accident shortly after its occurrence and testified that defendant was still seated in his automobile, and that when he talked with him there was a strong smell of beer in the automobile and, later, he noticed the same odor of beer on defendant's breath; that he again talked with defendant at the hospital and defendant there stated that he had been drinking beer. The trooper said that during his eleven years on the patrol he had had occasion to observe and talk with persons who had been drinking intoxicating liquor, that he was familiar with its odor and familiar with the appearance and demeanor of persons who had been drinking intoxicating liquor, and that, based on that experience and upon his observations of the defendant and his conversations with him, it was his opinion that the defendant was under the influence of alcohol at the time he talked with him at the scene of the accident.

■■ Defendant objected to the trooper stating his opinion on the sole ground that the subject was not a proper one for opinion testimony. The trial court properly overruled that objection. It is not error to permit a properly qualified witness to express his opinion as to whether one was intoxicated at a given time over an objection that the subject is not one for opinion testimony. State v. Powell, Mo., 306 S.W.2d 531, 532 [1]. In the instant case, there was no objection that the witness was not properly qualified to give the opinion or that he did not relate the facts upon which he based it. The sole objection, as

noted, was that the matter was not a proper one for opinion testimony. The trial court correctly ruled.

The last portion of defendant's new trial assignment 1, viz., "there is no substantial evidence to support the verdict," and new trial assignment 7, that the court erred in overruling defendant's motion for judgment of acquittal at the close of all the evidence, may be considered together.

It was agreed that Lynne Farrar died in Greene County, Missouri, on October 23, 1956, as a direct result of injuries received in an automobile accident which occurred on October 18, 1956, and there was no dispute about the fact that decedent was a passenger in an automobile being driven southwardly toward Springfield about 1:30 in the morning of October 18, 1956, when that automobile was collided with by defendant's automobile then being operated by him, proceeding northwardly at 50 miles per hour. The state's evidence was such that from it a jury reasonably could have found that at the time of the collision defendant was proceeding up a hill on the wrong side of the road and that when his automobile reached the crest of the hill it suddenly appeared directly in front of the automobile in which deceased was a passenger which was proceeding south in the right-hand lane; that at the time defendant was under the influence of alcohol, asleep, and that defendant later admitted that he was solely to blame for the collision.

■■ "To make negligence culpable under Sec. 4382 and to make it manslaughter if death results, the particular negligent conduct must be of such reckless character as to indicate an utter indifference for human life. State v. Ruffin, 344 Mo. 301, 126 S.W.2d 218; State v. Bolle, Mo.Sup., 201 S.W.2d 158; State v. Sawyers, 336 Mo. 644, 80 S.W.2d 164; State v. Schneiders, 345 Mo. 899, 137 S.W.2d 439; State v. Studebaker, 334 Mo. 471, 66 S.W.2d 877. 'The rule is settled that negligence to be culpable within the meaning of the man-

slaughter statute, Sec. 4382, R.S.1939, Mo. R.S.A. § 4382, must be more than ordinary common law negligence. It must be so great as to indicate a reckless or utter disregard of human life. Neither can we convict appellant merely because he had been drinking; nor by an application of the doctrine of res ipsa loquitur.' State v. Simler, 350 Mo. 646, 167 S.W.2d 376, loc. cit. 382. The fundamental requirement to fix criminal responsibility for the consequences of culpable negligence under Sec. 4382 is knowledge actual or imputed that the negligent act would tend to endanger human life. State v. Studebaker, supra, 66 S.W.2d loc.cit. 881, and authorities there cited." State v. Adams, 359 Mo. 845, 224 S.W.2d 54, 57 [1, 2].

Under the evidence in the instant case, the jury reasonably could have reached the conclusion that defendant's acts in driving 50 miles per hour, up a hill, on the wrong side of the highway, asleep, and under the influence of alcohol, and into a head-on collision with an automobile proceeding in its proper traffic lane, constituted such negligence on his part as indicated his utter indifference for human life and that defendant knew or in the exercise of ordinary care should have known that his actions were likely to endanger human life. There was substantial evidence to support the conviction.

We have reviewed those record matters which we examine, irrespective of whether they have been properly preserved for review, and find no error therein prejudicial to defendant.

The judgment is affirmed.

VAN OSDOL and HOLMAN, CC. concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.