STATE of Missouri,
Plaintiff-Respondent,

v.

Frank J. MAHAFFEY,
Defendant-Appellant.

No. 13162.

Missouri Court of Appeals,
Southern District,
Division Two.

July 3, 1984.

John D. Ashcroft, Atty. Gen., David Mason, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Douglas W. Greene, III, Springfield, for defendant-appellant.

PREWITT, Judge.

Defendant was convicted of selling marijuana and sentenced to ten years' imprisonment. He presents five points for our consideration. We discuss them in the order presented.

Defendant asserts in his first point that the trial court erred by refusing to give an instruction he tendered following MAI–CR2d 3.42 "Circumstantial Evidence". He contends: "This instruction was very important to appellant's case and was necessary to be given to the jury, mainly for the reason that defendant's primary defense was that of entrapment. Appellant asserts that there was no direct evidence of lack of entrapment and that only circumstantial evidence was adduced to prove lack of entrapment, so therefore, the circumstantial evidence instruction must have been given."

This contention is answered by the notes on use following the instruction. Note 2 states that it: "need not be given at all unless the evidence is wholly circumstantial." There was substantial direct evidence of guilt and that there may have been circumstantial evidence pertaining to some of the issues presented does not change the clear language of that note.

■■■ An instruction on circumstantial evidence is required only when all the evidence in the case is circumstantial. *State v. Sheppard*, 515 S.W.2d 785, 787 (Mo.App. 1974). If there is any direct evidence of the crime, a circumstantial evidence instruction is not required. *State v. Walls*, 597 S.W.2d 868, 870 (Mo.App.1980). This point is denied.

In his second point defendant states that the trial court erred by sustaining objections to questions he asked of Carolyn Porter, an "undercover agent" who had purchased the marijuana from defendant, during her cross-examination. The questions complained of in this point were: "Have you used drugs in the past?"; "Have you used speed before?"; and "Have you purchased marijuana from Charley Ingram?" He contends that these questions were relevant concerning the credibility of the witness, relying on *State v. Lynch*, 528 S.W.2d 454 (Mo.App.1975), and *State v. Horton*, 607 S.W.2d 764 (Mo.App.1980).

■■■ As those cases and others acknowledge, see *Murphy v. State*, 636 S.W.2d 699, 702 (Mo.App.1982); *State v. Meek*, 584 S.W.2d 168, 170 (Mo.App.1979), impeachment by showing such acts is a matter for the trial court's discretion.

■■■ Without objection defendant's counsel asked the witness: "You've used drugs in the past?", and the answer was "Yes." The objection came when counsel asked about using marijuana and when that was sustained, about using "speed".

Whether the witness had purchased marijuana from Charlie Ingram was answered, "No", before an objection was stated. Defendant would have been concluded by this answer, see *State v. Lynch*, supra, 528 S.W.2d at 457, and the record left with that denial, so there could have been no prejudice to defendant by the trial court sustaining the objection and ordering that question and answer stricken. Under the circumstances here we find no abuse of discretion in the trial court's ruling. This point is denied.

■ In summary, defendant states in his third point that the trial court erred by allowing Carolyn Porter to testify regarding other times that she had purchased marijuana from defendant because she had "no independent recollection of what had transpired". The full point is set out below.* The record does not support this contention. Defendant's counsel established that at the time her deposition was taken the witness "didn't have any independent recollection of what had transpired and the dates". At the trial she agreed with defendant's counsel "that the recollection that you have today comes from reading the reports". The reports were made by her and given to another who typed them from her reports but not in her "language".

Defendant relies on *Brookman v. General Safety and Security, Inc.*, 600 S.W.2d 100 (Mo.App.1980). There the witness had no present recollection after using the re-

port but was relying solely upon it. The record here indicates that the reports refreshed the witness's memory.

If the witness had "recollection" at trial as defendant's counsel suggested, and she agreed, then that indicates she had her memory refreshed by the reports and she recalled the incidents, not based upon the report, but upon her prior participation. "Recollection" is the act or power of recollecting and "recollecting" is to recall to mind; remember. The American Heritage Dictionary 1089 (1978). Had her testimony come solely from the report we would be faced with a situation apparently like in *Brookman*, but here it appears the reports caused her to recall the incidents. This point is denied.

Defendant's fourth point is as follows:

"The court erred to defendant's prejudice by allowing the playing of a tape recording of a conversation between the appellant and Carolyn Porter and also by allowing transcripts of the tape-recorded conversation to be passed to the jury for the following reasons:

a. Neither the tape recording nor the transcripts were the best evidence of the conversation;

b. The tape recording and the transcripts were cumulative and added emphasis to any damaging effect which the said conversation might have against defendant;

* The trial court erred to defendant's prejudice by allowing Carolyn Porter to testify about other times that she had allegedly purchased marijuana from the appellant for the following reasons:

a. In answer to voir dire questions by defense counsel, the witness testified that she had made written reports in her own handwriting, but that these reports had been given to Deputy Randy Watson and that Mr. Watson had thrown the reports away and that she had no independent recollection of what had transpired;

b. That the recollection she had on the day of trial came only from reading the reports that Randy Watson had typed for her and that the reports of the said Randy Watson were not in her words and not in her language;

c. That there was no showing that her reading of the reports was present memory revived

or past recollections recorded, and neither was it from her own recollection and, therefore, her testimony as to any prior sale was inadmissible for any purpose because it was based on the reports made by Randy Watson and not her independent recollection and, therefore, her testimony was based on hearsay;

d. Evidence of prior sales and prior disposition to sell a controlled substance was a necessary element of defendant's case, in order to disprove entrapment; and

e. Since Carolyn Porter's testimony as to prior sales was inadmissible, and since said testimony was essential to the state's case in chief, therefore, the trial court's decision to overrule defense counsel's objection and therefore allowing this testimony was erroneous and prejudicial.

c. The witness, Carolyn Porter, was present in court and testified as to her recollections of the said conversation;

d. The tape itself was audible obviating the necessity of any further transcript;

e. The trial judge did not instruct the jury that differences in meaning may be caused by such factors as the inflection in a speaker's voice;

f. There was no stipulation or evidence or testimony regarding the accuracy of the transcript;

g. There was no testimony with respect to by whom or how the transcript was prepared or to its accuracy;

h. The trial judge instructed the jurors that 'you are cautioned that you are to concentrate on the tape, these transcripts are merely an aid to assist you in understanding the tape, the tape itself is the real evidence in the case'; and

i. That the aforesaid oral instruction gave undue weight to the tape in that the judge specifically told the jury to concentrate on the tape and that the tape was 'real evidence', giving the tape recording undue weight, all to the prejudice of this appellant."

■ Human nature and memories being what they are, as a practical matter the tape would ordinarily be the most accurate evidence of what occurred in the conversation. See *State v. Montgomery*, 590 S.W.2d 105, 108 (Mo.App.1979). Although the best evidence rule has been said to apply only to documentary evidence, see *Riney v. Zenith Radio Corp.*, 668 S.W.2d 610, 611 (Mo.App.1984), it has also been said that it applies to sound recordings as well as documents. See *State v. King*, 557 S.W.2d 51, 53 (Mo.App.1977).

■ Carolyn Porter, a participant in the conversation with defendant, stated that she had listened to the tape to make sure it was accurate. That it is cumulative does not prevent its use because of the state's burden of proof. A transcript of the tape was given to each juror just before listening to the tape and after it was played the transcripts were taken from

them. There is no contention or showing that the transcripts varied from the tape. Obviously then, no prejudice from the use of the transcripts is shown.

■ The trial court did not instruct the jury that differences in meaning may be caused by such factors as the inflection in a speaker's voice, as suggested in *U.S. v. McMillan*, 508 F.2d 101, 106 (8th Cir.1974), cert. denied, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975). However, at trial there was no objection or request made that he do so and it seems apparent to us that the jurors would know this.

The trial judge telling the jury to concentrate on the tape because it was the real evidence and the transcript was merely an aid seems accurate and proper. See the reference to a similar comment in *State v. Armbruster*, 641 S.W.2d 763, 767–768 (Mo. 1982). The contentions made in this point are answered fully by *McMillan*, *Armbruster*, *State v. Engleman*, 634 S.W.2d 466, 475–480 (Mo.1982), *State v. Brown*, 607 S.W.2d 881, 885–886 (Mo.App.1980), and *Montgomery*. This point is denied.

■ In his final point defendant asserts that the trial court erred in not instructing the jury by using MAI–CR2d 2.50 "Character of Defendant Bearing on Guilt or Innocence". Paragraph number 1 of its Notes on Use states that the instruction is to be given "whenever there is evidence of defendant's general reputation of good character." This instruction need not be given unless there is substantial evidence of the defendant's good character. *State v. Martin*, 651 S.W.2d 645, 656 (Mo.App.1983). The state contends that there was no such evidence. Our examination of the transcript discloses none.

■ The argument portion of defendant's brief cites to the testimony of two witnesses where it is contended such evidence was presented. One of the witnesses, a friend of defendant, stated that defendant was polite to Carolyn Porter in a bar although she was "bugging" him "try-

24

ing to score some grass. And he didn't want it."

The other witness, defendant's mother, told of several telephone calls made to her home by Carolyn Porter seeking to talk to defendant. Defendant had told his mother that he did not want to talk to her and apparently did not at that time. Defendant also contends that as he testified he was awarded the Bronze Star in Vietnam, this showed his good character.

That he did not sell her marijuana on one occasion or return her phone calls on another does not mean that he was of good character. Other reasons may exist why he reacted in such a manner. Nor do we believe that being awarded the Bronze Star is the type of evidence the instruction refers to "concerning the reputation of defendant as to those traits of character which ordinarily would be involved in the commission of an offense such as that charged in this case." MAI–CR2d 2.50. And, of course, receiving the Bronze Star was sometime previous and character and reputation can change.

The record falls well short of reflecting any substantial evidence of good character. Compare *State v. Martin*, supra, 651 S.W.2d at 656. This point is denied.

The judgment is affirmed.

MAUS, P.J., and HOGAN, J., concur.